## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     :

     : 

    *versus*       :    CRIMINAL NO. 25-81-BAJ-RLB

     :

MARVELL TREVENSKI JACKSON, JR.    :

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and MARVELL TREVENSKI JACKSON, JR. ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

### A.    THE DEFENDANT'S OBLIGATIONS

#### 1.    Guilty Pleas

The defendant agrees to enter pleas of guilty to Count 1 of a Bill of Information charging him with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349 and Count 2 charging him with Theft of Mail in violation of 18 U.S.C. § 1708.

#### 2.    Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court. Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request. Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

### 3. Waiver of Indictment

The defendant agrees to waive indictment in open court at arraignment.

## B. UNITED STATES' OBLIGATIONS

### 1. Non-prosecution of Charges

The United States agrees that, if the Court accepts the defendant's guilty pleas, it will dismiss the indictment against the defendant and not prosecute him, for any offense related to the offenses charged in the Bill of Information.

### 2. Motion for Third Point for Acceptance of Responsibility

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter pleas of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level under USSG § 3E1.1(a).

## C. SENTENCING

### 1. Maximum Statutory Penalties

The maximum possible penalty on Count 1 is a term of imprisonment of up to 30 years, a fine of not more than $1,000,000, or both, and a term of supervised release of five years.

The maximum possible penalty on Count 2 is a term of imprisonment of not more than five years, a fine of not more than $250,000, and a term of supervised release of three years.

In addition to the above, the Court must impose a special assessment of $100 per count which is due at the time of sentencing. The Court may also order restitution.

### 2. Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to three years, without credit for any time already served on the term of supervised release.

### 3. Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence

up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

**4.    Agreement Regarding Sentencing**

The defendant and the United States agree, pursuant to 18 U.S.C. § 3663(a)(3), that the Court shall not be limited to the counts of conviction for purposes of ordering restitution. Except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

**5.    Forfeiture**

The defendant agrees to forfeit any property constituting, or derived from, proceeds he obtained directly, or indirectly, as a result of the offenses charged in Counts 1 and 2 of the Superseding Bill of Information. The defendant admits that the amount of the proceeds derived from the offenses was at least $370,000. He therefore agrees to forfeit to the United States a sum of money equal to $370,000 in United States currency and consents to entry of a personal money judgment against him in such amount.

The defendant understands that forfeiture of his property will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence. The defendant further understands that, separate and apart from his sentence in this case, the United States may also institute civil or

administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass clear title to forfeitable assets to the United States. The defendant agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's pleas.

## D.     FACTUAL BASIS

The United States and the defendant stipulate to the following facts:

Between at least July 2023, and continuing through at least May 2025, in the Middle District of Louisiana and elsewhere, the defendant, Marvell Trevenski Jackson, Jr. ("JACKSON"), conspired with others, known and unknown, to defraud federally insured financial institutions, including Neighbor's Federal Credit Union ("NFCU"), Essential Federal Credit Union ("EFCU"), First Guarantee Bank and Trust ("FGB"), Navy Federal Credit Union ("Navy FCU"), and Regions Bank, among others. JACKSON and his co-conspirators employed a variety of methods, including stealing or obtaining stolen mail to obtain personal and financial information of bank customers; altering or washing checks stolen from the mail; creating counterfeit checks using stolen bank account information; disseminating spam text messages designed to trick bank customers into revealing bank account information and login

credentials; and using that confidential information to unlawfully access and transfer funds from victims accounts. To further the purpose of the conspiracy and to evade detection, JACKSON recruited other individuals, commonly known as "money mules," to either open accounts or whose existing accounts could be used to receive the fraud proceeds. Once the stolen funds were deposited into the accounts held by the money mules or other co-conspirators, these individuals withdrew the funds, keeping a portion for themselves and providing the majority to JACKSON.

Mail Theft

Between at least July 2023 and continuing until at least May 2024, JACKSON conspired with others, known and unknown to the grand jury, to obtain personal identifying information ("PII"), along with personal and business checks, that were stolen from the U.S. mail.

For example, between July 1, 2023, and September 26, 2023, JACKSON communicated with Co-Conspirator 1, mail carrier and resident of Denham Springs, Louisiana, to purchase over $119,000 worth of checks stolen from the mail, including a check issued by victim M.M. in the amount of $1,450. Members of the conspiracy later altered the check, changing the payee to that of a money mule and the amount payable to $60,000. Members of the conspiracy deposited the check at a Regions Bank in Baton Rouge. The funds were withdrawn before the bank identified the fraud, causing a loss of $60,000 to Regions Bank.

In another instance, in or around February 7, 2024, JACKSON stole mail, including personal and business checks totaling at least $20,378 that had been placed for collection in the blue boxes at the US Postal Service's office located on Florida Street in Baton Rouge. These stolen checks and others, totaling over $270,000 were later located in a residence used by JACKSON, along with the tools and supplies required for printing counterfeit checks.

In total, JACKSON and his conspirators obtained or sought to obtain over $500,000 by negotiating, and attempting to negotiate, altered or counterfeit checks using checks and other financial data obtained from stolen U.S. mail.

Smishing Scheme

Members of the conspiracy also engaged in "smishing," short for "SMS phishing," a cyber-attack technique whereby perpetrators use Short Message Service ("SMS") or text messages purporting to be from reputable companies in order to induce victims to reveal personal information, such as usernames, passwords, or bank account numbers.

Between April and May 2025, members of the conspiracy sent fraudulent text messages to customers of NFCU, EFCU, and FGB. The text messages falsely reported unauthorized

financial transactions and directed customers to provide login credentials and other confidential information needed to access their bank accounts. In some instances, members of the conspiracy followed the fraudulent text messages with phone calls to customers to elicit personal and confidential information regarding their accounts by impersonating bank employees.

Members of the conspiracy then used the bank account information provided by customers to conduct unauthorized electronic transfers of funds from victims' accounts. In order to conceal the fraud and evade detection, JACKSON recruited money mules to open bank accounts at NFCU, EFCU, and FGB, which could be used to receive unauthorized electronic transfers from customers' bank accounts in exchange for keeping a portion of the funds. JACKSON advertised the scheme and recruited the money mules on his Instagram account.

Thereafter, members of the conspiracy unlawfully accessed and transferred funds from customer's accounts to the accounts opened by money mules at NFCU, EFCU, and FGB. JACKSON directed the money mules to withdraw or to electronically transfer the stolen funds to himself or other members of the conspiracy.

JACKSON and his conspirators executed the smishing scheme in East Baton Rouge Parish, Iberville Parish, Livingston Parish, and others, defrauding financial institutions including NFCU, EFCU, FGB, and their customers of over $300,000.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the offenses to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

## E. BREACH AND ITS CONSEQUENCES

### 1. Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this agreement:

      a.     failing to plead guilty to the Bill of Information at arraignment;

      b.     representing, directly or through counsel, to the United States or the Court that he will not plead guilty to the Bill of Information;

      c.     moving to withdraw his guilty pleas;

      d.     filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

      e.     disputing or denying guilt of the offenses to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

      f.     failing or refusing to waive indictment in open court at arraignment;

      g.     concealing or disposing of assets with the specific intent of shielding such assets from forfeiture;

      h.     providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

      i.     violating the terms of this agreement or the supplement to the plea agreement in any other manner.

### 2. Consequences of Breach

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement. In particular, the United States may prosecute the defendant for any criminal offense. In addition, any statements and

information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty pleas), and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel). The defendant is not entitled to withdraw his guilty pleas.

3.  **Procedure for Establishing Breach**

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement and the supplement to the plea agreement as a result of a breach by the defendant. After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach. However, the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement or the supplement to the plea agreement, or any evidence or information derived

therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement or the supplement to the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of his counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

## F. WAIVERS BY THE DEFENDANT

### 1. Waiver of Trial Rights

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

### 2. Waiver of Appeal and Collateral Remedies

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-

conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; and (b) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court. Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

### 3.    <u>Waiver of Statute of Limitations</u>

The defendant hereby waives all defenses based on the applicable statutes of limitation as to all offenses charged in the Bill of Information and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4. Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to all offenses charged in the Superseding Bill of Information. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

## G. EFFECT OF AGREEMENT

### 1. Effective Date

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, his counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

### 2. Effect on Other Agreements

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court. In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating. The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

### 3. Effect on Other Authorities

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

### 4. Effect of Rejection by Court

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement. If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and are not binding on the Court. If the Court rejects the plea agreement and the supplement, the defendant will be given the opportunity to withdraw his pleas and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw his pleas following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

## H. REPRESENTATIONS AND SIGNATURES

### 1. By The Defendant

I, MARVELL TREVENSKI JACKSON, JR., have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Bill of Information and discussed it with my attorney. I fully understand the nature of the charges, including the elements. I understand that I am entitled, under the Fifth Amendment of the United States Constitution, to have the charges instituted by a Grand Jury Indictment.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of Counts 1 and 2 of the Superseding Bill of Information.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_Marvell Jackson_____  DATE: _2/5/26_____
MARVELL TREVENSKI JACKSON, JR.
Defendant

2.      **By Defense Counsel**

I have read the Bill of Information and this plea agreement and have discussed both with my client, MARVELL TREVENSKI JACKSON, JR., who is the defendant in this matter. I am satisfied that the defendant understands the agreement and the charges against him,

including the elements. I am also satisfied that the defendant is entering into the agreement knowingly and voluntarily. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____     DATE: _February 13, 2026_
Ian F. Hipwell
Counsel for Defendant

3.     **By the United States**

We accept and agree to this plea agreement on behalf of the United States. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____     DATE: _1-28-26_
Kurt Wall
United States Attorney
Middle District of Louisiana

_____     DATE: _2/18/26_
Kristen Lundin Craig
Assistant United States Attorney
Middle District of Louisiana